within the waters of Chicago harbor. It is true there was open water to the south of this pier and that vessels could go to a wide range to the south, limited only by their draft of water; but the range to the north was limited by the North pier, and it was in the route where returning tugs, or tugs with tows, or vessels coming into the harbor, would naturally be. A tug going down,—going out of the harbor,—with the entire range to the south of them unobstructed, should certainly—whether it is a matter settled by usage or not (and if not settled now, it should be hereafter)—understand they are not in the right place when they are hugging the pier. The ordinary rules of the way apply to the river and harbor as far as the harbor is controlled by the artificial structure for the purpose of making the harbor, and vessels navigating the waters there are governed by the ordinary rules of river and harbor navigation.

When the tug Dole started down the harbor and held her course in close proximity to the North pier, they must have known that they were within the route usually occupied by vessels and by tugs coming up the harbor. They were, therefore, in the wrong, —they were in the wrong place,—and bound, of course, for the consequences of that wrong.

I cannot say that the Evans is entirely blameless in the matter, because I think that when she discovered that the Dole was there, no matter from what cause, whether by her own disregard of the rules of navigation or from any other reason, the fact that she was there became a patent fact to those in control of the Evans, and they were bound to take notice of it and to manage their craft accordingly, and to approach the place where the Dole was with due caution. The Evans was running at a pretty rapid rate of speed at the time she signaled the Dole, and seems to have kept up that speed for some time at least.

I have come to the conclusion that it is a proper case for the division of the damages which were received by the two vessels. I think that the Dole was guilty of negligence in being alongside the North pier in the route usually traversed by vessels coming into the harbor, and that her negligence consisted in being out of place; that the Evans was guilty of negligence in running at too rapid a rate of speed and of going to the starboard after receiving the Dole's signal that she, the Dole, wished to pass on the port side. There may have been a reason, I do not say that it existed in this case, but I say that it might exist, why a tug cannot obey the sailing regulations; but it is enough for the purpose of this case that the Evans notably disregarded all the circumstances.

It is to be borne in mind that this was in the night-time, that the parties could not see each other, and I think it was reckless on the part of the officers of the Evans to rush her into collision with the Dole, notwithstanding the fact that the Dole was out of place. I shall therefore decree that a reference be made to the master to ascertain the amount of damages sustained by the two boats, and that those damages be borne equally by them.

## Case No. 8,535.

### The LOUISETTA.

[2 Gall. 307.] [1]

Circuit Court, D. Massachusetts. Oct. Term. 1814.

PRACTICE IN ADMIRALTY — COSTS — CLAIM UNDER ATTACHMENT—CAUTION.

1. Practice as to costs and charges, where several parties intervene for separate interests.

[Cited in The Mary. Anne, Case No. 9,195.]

2. Where a party claims under an attachment, he must file a caution in court, to hold the proceeds remaining after satisfying prior claims.

[Cited in The Mary Anne, Case No. 9,195.]

This vessel was seized and libelled on behalf of the United States, afterwards libelled for seamen's wages, sold on interlocutory order, and finally decreed to be restored.

Mr. Hubbard, of counsel for owners and claimants, now moved the court for a direction to the clerk to pay over the proceeds, or at least so much thereof, as would compensate him as counsel, the clerk having doubts as to his authority to pay them over, because he had understood there were attachments upon the same property, returnable to the state court. There was no evidence of any attachment made; and it appeared, upon inquiry, that the party, claiming under the attachment, had done nothing more than to file a copy of his writ with the marshal.

THE COURT said, they could not take notice of any attachment, unless a caution was filed in court; and Welsh, of counsel for the claimants under the attachment, was directed to file such a caution.

The Louisetta was taken into custody under the seizure by the United States in June. The libel on behalf of the seamen was served in August. The marshal had charged these libellants with the custody fees from the time the warrant on their libel was served.

Mr. Hubbard, for the owners and claimants, and Mr. Welsh, for the seamen, contended that the vessel, being already in the custody of the United States under their seizure, and there having been an appeal from the decree of the district court, so that it was necessary for the United States to retain the property in custody, this was properly a charge to the United States, and ought not to be borne, either by the owners, to whom restitution was decreed, or by the seamen.

THE COURT confirmed this reasoning, and said, the expenses must be borne by the United States, there having been probable cause, which excused the collector.

---

1 [Reported by John Gallison, Esq.]